IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN MARIE C. REESE, Administratrix of the Estate of Lawrence A. Jones, Jr., Deceased<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF PITTSBURGH, CHIEF OF POLICE, NATHAN NARPER; OFFICER JEFFREY JOHN ABRAHAM; OFFICER JOSEPH P. FABUS,<br><br>        Defendants. | Civil Action No. 12-1667<br>United States Magistrate Judge<br>Cynthia Reed Eddy[1] |

**MEMORANDUM OPINION**

**I.**     **Introduction**

On November 13, 2012, Plaintiff Evelyn Marie C. Reese filed this civil rights action against the above-captioned Defendants on behalf of her son, Lawrence A. Jones, Jr. ("Jones"), as the Administratrix of his estate, pursuant to 42 U.S.C. § 1983. (ECF No. 1). The Complaint claims that two Pittsburgh Police Officers, Joseph P. Fabus ("Officer Fabus") and Jeffery John Abraham ("Officer Abraham") unconstitutionally used excessive force on Jones at a traffic stop, which resulted in Jones' death. Additionally, Plaintiff claims that the City of Pittsburgh and the former Chief of Police, Nathan Harper, caused constitutional injury to Jones by having in place a custom, policy, or practice of deliberate indifference to the constitutional rights of its citizens.

Following Discovery, Defendants filed the present Joint Motion for Summary Judgment. (ECF No. 30). The matter has been fully briefed and is ripe for disposition. (ECF Nos. 31-38).

---

[1]     By consent of the parties, (ECF Nos. 13-15), pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

1

For the reasons that follow, the Motion will be granted in part and denied in part. Defendnat's Motion for Summary Judgment will be granted in favor of the following Defendants: Officer Abraham, the City of Pittsburgh, and Nathan Harper. Defendant's Motion for Summary Judgment will be denied as to of Officer Fabus.

**II.	Statement of the Facts**

**A.	Facts Upon Which the Parties Agree**

On December 23, 2011, Jones was operating his vehicle and was pulled over by Defendant Officer Fabus and Officer Joseph R. Brown ("Officer Brown")[2] for a noise violation.[3] In his deposition, Officer Brown asserted that an additional basis for the stop was that Jones' vehicle had bald tires, which constitutes a vehicle code violation.[4] Plaintiff does not challenge whether the Officers had probable cause to stop Jones.

At the time of the stop, Officer Fabus and Officer Brown were both in civilian clothing and were operating an unmarked vehicle.[5] They approached Jones' vehicle and spoke with him for a few moments.[6] Officer Brown then ordered Jones to turn his ignition off and to place his keys on the dashboard.[7] Jones complied; however, shortly thereafter he placed his keys in the ignition, started his vehicle, and crashed into a van that was parked in front of him.[8] Jones next reversed his vehicle to separate from the van.[9] As Jones was reversing, Officer Brown, who at

---

[2]  Officer Brown is not a party to this action.
[3]  Brown Deposition (ECF No. 34-1), at 2.
[4]  *Id.* at 3-4.
[5]  Brown Supplemental Report (ECF No. 34-5), at 1.
[6]  Brown Deposition (ECF No. 34-1), at 5-6.
[7]  *Id.* at 10-12.
[8]  *Id.*; Brown Deposition (ECF No. 31-2), at 7-8.
[9]  Brown Deposition (ECF No. 34-1), at 13.

the time was standing to the back, right side of Jones' vehicle in the street, relocated his position to the sidewalk.[10]

Jones then placed his vehicle in drive in an attempt to leave the scene and started moving forward in the direction of Officer Fabus, who was standing in the street toward the front, left side of Jones' vehicle.[11] The parties dispute whether the vehicle was driving directly at Officer Fabus. As the vehicle drove forward, Officer Fabus fired several shots into Jones's vehicle.[12] Officer Brown did not discharge his firearm during this incident.[13]

Defendant Officer Abraham was not involved in the shooting and only participated as back-up after Jones had already been shot.[14] After Jones' vehicle came to a stop, Officer Fabus and Officer Abraham approached the vehicle and opened the driver door.[15] When the door was opened, Jones' body slid out of the vehicle and a firearm fell from his person, landing near him in the street.[16] According to Officer Brown, Jones' hand was in his pocket after he had been shot.[17] Jones died forty minutes later as a result of his injuries.[18]

### B. Defendants' Version of the Facts

Defendants claim that when Officer Fabus and Officer Brown pulled Jones over, their badges were displayed, they used lights and sirens on their unmarked vehicle to effectuate the stop, and they identified themselves as police officers.[19] Defendants also contend that Jones was not cooperative from the start of the traffic stop, including driving past several empty parking

---

[10] *Id.*
[11] Fabus Deposition (ECF No. 31-3), at 5.
[12] *Id.*
[13] Brown Deposition (ECF No.31-2), at 9.
[14] Plaintiff's Brief in Opposition to Summary Judgment (ECF No. 34), at 2.
[15] Fabus Deposition (ECF No. 31-3), at 7.
[16] *Id.*
[17] Brown Supplemental Report (ECF No. 34-5), at 4.
[18] Tribune Review Article (ECF No 34-8), at 1; Initial Report (ECF No. 34-6), at 1.
[19] Brown Deposition (ECF No. 31-2), at 4-5.

spaces and failing to completely pull over, ultimately parking halfway in traffic.[20] They also contend that he would not remove his left hand from a concealed area in his lap during the entire traffic stop.[21] Defendants assert that Jones was asked to step out of the car, but he instead placed the keys in the ignition and started his vehicle.[22] Defendants further contend that Officer Fabus and Officer Brown repeatedly ordered Jones to show his hands, which they claim he did not do, and Jones then crashed into the van in front of him at a high rate of speed.[23]

When Jones reversed his vehicle after crashing into the van, Defendants state that it was necessary for Officer Brown to relocate to the sidewalk in order to avoid injury.[24] Defendants also claim that when Jones started to move his vehicle forward again, it was aimed at Officer Fabus, who pleaded with Jones to stop.[25] At this point, Defendants assert that Jones raised his left hand and pointed a gun at Officer Fabus, who responded by firing his weapon at Jones.[26] According to Defendants, verbal commands continued after the firing due to Jones' continued attempts to manipulate his vehicle.[27] Following this incident, the City of Pittsburgh conducted an investigation of the incident, which Defendants assert was thorough, and determined that the officers acted appropriately.[28]

### C. Plaintiff's Version of the Facts

Plaintiff contends that Jones was immediately cooperative, pulling his vehicle over within approximately four seconds after the officers initiated the stop and placing his keys on the

---

20 *Id.* at 5.
21 Fabus Deposition (ECF No. 31-3), at 3.
22 *Id.* at 4.
23 Brown Deposition (ECF No.31-2), at 7-8.
24 *Id.* at 8.
25 *Id.*
26 Fabus Deposition (ECF No. 31-3), at 5.
27 *Id.* at 6.
28 Fabus Debrief Report (ECF No. 31-5), at 2.

4

dashboard within one minute of the stop.[29]  Pointing to video footage of the incident, Plaintiff also argues that Jones was only trying to leave the scene, and was not driving his vehicle towards either Officer Brown or Officer Fabus in such a way that they were in danger of being hit.[30] Additionally, Plaintiff disputes the claim that Jones was pointing a gun at Officer Fabus because Jones' left hand was in his pocket both before and after he was shot.[31]  Plaintiff also asserts that at least one witness at the scene said that the shooting was unnecessary and that there were many other witnesses at the scene who were not interviewed by the City.[32]

### III. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[29] Video (ECF No. 34-4), 15.51.57.94-15.52.00.94; Brown Deposition (ECF No. 34-1), at 12.
[30] Video (ECF No. 34-4), 15.55.23.14-15.55.40.30.
[31] Brown Supplemental Report (ECF No. 34-5), at 4.
[32] Plaintiff's Brief in Opposition to Summary Judgment (ECF No. 34), at 2-3.

5

Fed.R.Civ.P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining

"'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

   IV.   Discussion

   A. Claim Against Defendant Officer Fabus

With respect to Plaintiff's claim that Officer Fabus violated Jones' Fourth Amendment right by shooting and killing him, Defendants counter that Officer Fabus acted reasonably.[33] "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d. Cir. 2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). Due to the fact-specific nature of this reasonableness inquiry, the Third Circuit has adopted several factors in order to make this determination. *Id.* at 776-77. "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Id.*; s*ee also Graham,* 490 U.S. at 396. "A court … also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, [and] the possibility that the suspect may be armed …" *Id.* at 777;

---

[33] Defendant's Brief in Support of Summary Judgment (ECF No. 31), at 6.

s*ee also Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997). On the question of reasonableness, defendants can be entitled to summary judgment if "after resolving all factual disputes in favor of the plaintiff … the officer's use of force was still objectively reasonable under the circumstances." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)). In deadly force cases, the court may "'not simply accept what may be a selfserving account by the officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably.'" *Id.* at 294 (quoting *Henrich,* 39 F.3d at 915).

In support of their argument that Officer Fabus acted reasonably, Defendants assert that Jones threatened Officer Fabus' life when attempting to flee by driving his car directly into Officer Fabus' path.[34] Defendants further argue that Jones threatened Officer Fabus' life by pointing a gun at him as Jones was driving towards him.[35] However, Plaintiff claims that there is sufficient evidence to challenge whether Jones was driving directly into Officer Fabus' path and whether Jones was pointing a gun at Officer Fabus.[36]

Specifically, Plaintiff claims that the video footage of the incident indicates that Jones' vehicle was not heading directly towards Officer Fabus as he was fleeing because Officer Fabus was actually standing to the side of the vehicle.[37] Both Officer Brown and Officer Fabus stated in their depositions that deadly force would not be appropriate if Officer Fabus was not in danger of being run over by Jones' vehicle.[38] The Court has reviewed the video and concludes that it creates a genuine issue of material fact as to whether the vehicle was traveling in Jones' path,

---

[34] Defendant's Brief in Support of Summary Judgment (ECF No. 31), at 6.
[35] *Id.*
[36] Plaintiff's Brief in Opposition to Summary Judgment (ECF No. 34), at 2-3.
[37] *Id.* at 2-4.
[38] *Id.* at 3.

8

which should be resolved by the jury. Regarding whether Jones pointed a gun at Officer Fabus, Plaintiff argues that since the Officers stated in their depositions that Jones' left hand was in his pocket during the stop and also in his pocket after he had been shot, Jones did not point a gun at Officer Fabus.[39] Officer Fabus counters that he saw a revolver pointed at him and believed that Jones was going to shoot him.[40] An examination of the factual record and consideration of the reasonable inferences therefrom, in the light most favorable to the non-moving party, requires the Court to conclude that genuine issues of material facts exists which should be resolved by the jury. Therefore, Officer Fabus' Motion for Summary Judgment is denied.

### B. Claim Against Officer Abraham

In her Response to Motion for Summary Judgment, Plaintiff acknowledges that Officer Abraham is entitled to Summary Judgment.[41] Both parties agree that "Officer Abraham was not involved at the time of the shooting but only participated as back up after shots had already been fired."[42] Accordingly, Officer Abraham is entitled to summary judgment.

### C. Claim Against the City of Pittsburgh

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978) (emphasis in original). Thus, in order for a plaintiff to prevail on a § 1983 claim against a municipality, she must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 (3d Cir. 2013). "Policy is made when a 'decisionmaker

---

[39] *Id.* at 2.
[40] Fabus Deposition (ECF No. 31-3), at 4-5.
[41] (ECF No. 33), at ¶ 8.
[42] Plaintiff's Brief in Opposition (ECF No. 34), at 2; *see also* Defendant's Brief in Support of Summary Judgment (ECF No. 31), at 6.

9

possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original). "A course of conduct is considered to be 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alterations in original). Knowledge and acquiescence are also grounds for establishing a custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)("*Canton*"). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. Further, "'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in the training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Canton*, 489 U.S. at 391) (alteration in original).

Additionally, a "city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the City itself to violate the Constitution.'" *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.*

Plaintiff claims that the City of Pittsburgh has a custom, policy, or practice through its Bureau of Police of deliberate indifference to unconstitutional use of excessive force by its police

officers and of plainclothes officers failing to properly identify themselves which has caused the Plaintiff's decedent's injuries.[43] Plaintiff further claims that despite the City's knowledge of these alleged customs, it has failed to adequately investigate complaints concerning them and has failed to discipline or properly train police officers engaging in such practices.[44] However, after engaging in discovery, Plaintiff has identified no evidence of an applicable policy, custom, or training deficiency which caused a violation of Jones' rights. Plaintiff has not established any knowledge or acquiescence on behalf of the City, and has failed to meet the deliberate indifference standard.

The only evidence that Plaintiff points to is a police report regarding the investigation of the incident in which the Plaintiff claims that it "appears" that the City determined that Officer Fabus' use of force was appropriate and within bureau policy.[45] Plaintiff acknowledges that this report does not identify any specific police department policy, but asserts that this "policy would apparently authorize a police officer to shoot and kill a fleeing summary offence suspect, which of course would not be within the reasonableness requirement of the Fourth Amendment."[46] This, however, is a mischaracterization of the report, which states that Officer Fabus shot Jones in response to Jones producing a hand gun, not merely in response to his attempted fleeing.[47] Consequently, Plaintiff has failed to identify an applicable policy.[48]

---

[43] Complaint (ECF No. 1), at ¶¶ 6,8,10.
[44] *Id.* at ¶¶ 9, 11.
[45] Plaintiff's Brief (ECF No. 34), at 4.
[46] *Id.* at 4-5.
[47] Initial Report (ECF No. 34-6), at 1.
[48] Although Plaintiff does not reference Officer Fabus' Debrief Report, the Court notes that it contains a statement by the City that Officer Fabus' actions were "appropriate and consistent with the Bureau's Use of Force and Training." (ECF No. 31-5), at 2. This conclusion in the report was based on Officer Fabus' account of the events, which includes allegations that Jones pointed a gun and drove his car at Officer Fabus. As a result, it can hardly be said that this report establishes that the City had a policy in place that authorized the use of deadly force on a fleeing summary offense suspect.

11

Additionally, Plaintiff has failed to provide any evidence of a specific custom of deliberate indifference, failed to identify evidence as to other instances of similar occurrences that would indicate a custom of use of excessive force, and failed to establish a custom of plainclothes police officers failing to properly identity themselves. Plaintiff merely asserts that she is aware of numerous instances in which citizens were injured in these types of situations, but provides no further evidence or details of the same.[49] Such a bare assertion is insufficient to establish a custom for purposes of municipal liability.

While Plaintiff has failed to establish any applicable policy or custom, there is nevertheless "a narrow range of circumstances" in which "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" that a pattern of similar violations might not be necessary to show deliberate indifference. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). The Supreme Court has explained that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Id.* In *Canton*, the Supreme Court hypothesized the following situation in which a municipality could be liable for a single-incident failure to train violation:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*Canton*, 489 U.S.at 390 n. 10.

---

[49] Plaintiff's Responsive Concise Statement of Material Facts (ECF No. 35), at ¶¶ 10, 11.

In determining the inadequacy of a training program, the unsatisfactory training of a single officer will not alone suffice; neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training. *Id.* at 390-91. Liability in single-incident cases depends on the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Bryan Cnty,* 520 U.S. at 409 (1997).

Plaintiff has failed to set forth any evidence that the City has failed to adequately train its officers to handle recurring situations presenting an obvious potential for such a violation. In fact, Plaintiff does not even identify a specific training program. Further, Plaintiff has failed to point to any evidence that would indicate a likelihood that the situation will recur or that it is foreseeable that an officer will lack the specific tools to handle such a situation that will violate citizens' rights. Therefore, Plaintiff has failed to meet the criteria to establish single-incident liability.

In light of Plaintiff's failure to produce any evidence against the City, a reasonable jury could not find that the City is liable to Plaintiff. As a result, the City of Pittsburgh is entitled to summary judgment.

### D. Claim Against Former Chief of Police, Nathan Harper

A supervisor may be found personally liable under § 1983 if it is established that he, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d. Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989) (alteration in original). Additionally, "a supervisor may be personally liable … if he or she participated in violating the plaintiff's rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010).

In the Complaint, Plaintiff claims that former Chief of Police, Defendant Harper was aware of and/or had notice of a custom, policy, or practice of police officers using excessive force, of plainclothes police officers failing to properly identify themselves, and of numerous instances of Pittsburgh police officers filing false reports and lying under oath resulting in citizens suffering constitutional injuries.[50] Plaintiff claims that despite this knowledge, Defendant Harper failed to take action to stop or curtail such conduct.[51] Plaintiff has failed to produce any such evidence. Therefore, summary judgment is appropriate in favor of Defendant Harper because Plaintiff has not established that he acted with deliberate indifference, participated in violating Jones' rights, directed his Officers to violate Jones' rights, or had knowledge of or acquiesced as to his Officer's violations of Jones' rights.

## V.     Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment will be denied as to Officer Joseph P. Fabus and granted as to the remaining Defendants: Officer Jeffrey John Abraham, the City of Pittsburgh, and former Chief of Police, Nathan Harper. An appropriate Order follows.

BY THE COURT:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record via CM-ECF.

---

[50] Complaint (ECF No. 1), at ¶ 13.
[51] *Id.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN MARIE C. REESE, )<br>Administratrix of the Estate of )<br>Lawrence A. Jones, Jr., Deceased )<br>)<br>       Plaintiff, )<br>)<br>       v. )<br>)<br>CITY OF PITTSBURGH, CHIEF OF )<br>POLICE, NATHAN NARPER; OFFICER )<br>JEFFREY JOHN ABRAHAM; OFFICER )<br>JOSEPH P. FABUS, )<br>)<br>       Defendants. ) | Civil Action No. 12-1667<br>United States Magistrate Judge<br>Cynthia Reed Eddy |

**ORDER**

AND NOW, this 5th day of August, 2014, in conjunction with the foregoing Memorandum Opinion, it is HEREBY ORDERED that Defendants' Joint Motion for Summary Judgment (ECF No. 30) is DENIED with respect Officer Joseph P. Fabus, and GRANTED with respect to the remaining Defendants: Officer Jeffrey John Abraham, City of Pittsburgh, and Chief of Police, Nathan Harper.

IT IS FURTHER ORDERED that the Court will conduct a Status Conference on **August 19, 2014 at 10:00 AM** in which a trial date and deadlines will be discussed for the Court's Pretrial Order, which will be separately issued following said conference.

                                                                BY THE COURT:

                                                                s/ Cynthia Reed Eddy
                                                                Cynthia Reed Eddy
                                                                United States Magistrate Judge

cc: all registered counsel via CM-ECF